## WAYCROSS AIR-LINE RAILROAD COMPANY *v.* SOUTHERN PINE COMPANY OF GEORGIA *et al.*

1. Where a lumber company, by a written contract, granted to a railroad company a right of way over all the lands which the grantor then owned, or might thereafter own, through which the railroad of the grantee then ran, or over which it might thereafter run, "to and from any and all points authorized by the [then existing] charter" of the railroad company, the meaning of the contract was, that the railroad company should have a right of way, for its railroad, over the lands of the grantor to and from any of the termini of the railroad designated or indicated in the charter of the railroad company.   Under such a contract, the railroad company did not acquire a right of way through the lands of the lumber company for a temporary spur-track, for private use only, from its main line to a point some three or four miles distant therefrom, which was not named or indicated in the charter as one of the points to which it was authorized to build its road.   Consequently, when the railroad company undertook, solely under the right which it acquired by this contract, to construct such a spur-track upon and across the lands of the lumber company, and the latter forcibly prevented it from doing so, it was not erroneous, upon petition by the railroad company for an injunction, for the court to refuse to enjoin the lumber company from further interfering with the construction of such track upon its lands.   Nor was it erroneous, upon the cross-application of the lumber company, to enjoin the railroad company from constructing this track upon the lands in question.
2. When, in acting upon an equitable petition for injunction, the court grants to one of the parties the right to exercise a specific privilege on stated conditions, such party by accepting the grant becomes bound by the conditions, and the court may subsequently enforce compliance there-

with, and, in so doing, does not, though ordering the party to do phys-
ical acts, violate the rule against granting mandatory injunctions.

3. The general railroad law of this State, which provides that "the general
direction and location" of a new railroad, constructed by one railroad
company, "shall be at least ten miles from [a] railroad already con-
structed" by another railroad company, except at points "within ten
miles of either terminus" (Civil Code, § 2176), does not prevent a purely
private corporation from constructing, and itself operating for its own
exclusive use upon its own land, a tramroad for the purpose of hauling
lumber, etc., from its sawmill located upon one railroad to another and
competing railroad, for shipment over the latter road, although such
tramroad may run parallel to and in close proximity to the first-men-
tioned railroad.

Argued May 7, — Decided July 11, 1900.

Injunction.    Before Judge Bennet.    Coffee county.    April
11, 1900.

*J. L. Sweat,* for plaintiff-in error.
*W. E. Kay* and *J. C. McDonald,* contra.

Fish, J.    1. The Waycross Air-Line Railroad Company un-
dertook to build a spur-track, extending from its main line to
a point three or four miles distant therefrom, upon and across
the land of the Southern Pine Company of Georgia, without
consulting the latter and without resorting to condemnation
proceedings to procure a right of way for such track.    We by
no means intend to intimate that the railroad company could
have procured a right of way, for the spur-track which it was
seeking to construct, by exercising the State's power of emi-
nent domain, but are merely stating the facts, which show that
its claim was not based upon an alleged right to take this pri-
vate property for public use, under the forms and by due process
of law.    It based its claim to a right of way for this track over
the lines of the Pine Company entirely upon a written contract
with the latter company.    Therefore, so far as this case is con-
cerned, if the railroad company's claim is not supported by the
contract upon which it relies, the court below committed no
error in refusing to enjoin the Pine Company from preventing
or interfering with the construction of the spur-track upon its
land, nor in enjoining the railroad company, until the further
order of the court, from constructing the track upon this land.
The contract upon which the railroad company relies was ex-
ecuted by the parties on the 5th of August, 1895, and in it the

Southern Pine Company of Georgia, which is otherwise des-
ignated therein as the party of the first part, grants to the
Waycross Air-Line Railroad Company, otherwise designated as
the party of the second part, a right of way, not less than 150
feet wide, "over all lands the said party of the first part now
owns, or which it may hereafter own or become entitled to,
through which the railroad of the said party of the second part
now runs, or over which it may hereafter be run, to and from
all points authorized by the present charter of the party of the
second part." There is nothing in the original charter of the
Waycross Air-Line Railroad Company, nor in either of the
amendments thereto, which expressly authorizes it to build its
railroad, or any branch thereof, to the proposed terminus of
this spur-track. Its original charter authorized it to build a rail-
road "from Waycross, in the county of Ware, to the city of
Macon or Hawkinsville, in Pulaski county, or to some point
on the East Tennessee, Virginia and Georgia Railroad, in the
counties of Appling, Telfair, or Dodge, and thence to Dublin
in Laurens county, and from Waycross to the Florida line, at
some point on the St. Mary's river, with the right of extending
the same to the port of St. Mary's, Georgia." Acts 1887, p.
227. By an amendment to its charter, in 1889, it was author-
ized to build a railroad "from Waycross, through the counties
of Ware, Appling, Coffee, Irwin, and Wilcox, to Cordele, Dooly
county." Acts 1889, p. 247. Another amendment, in 1891,
authorized "an extension of said road from some point on the
line thereof as now surveyed and located in the counties of
Coffee or Irwin, through the counties of Wilcox and Dooly, to
Fort Valley in Houston county, and also an extension or branch
from its line between Waycross and St. Mary's to Brunswick or
South Brunswick, in Glynn county." Acts 1890–1891, p. 416.

As we have seen, under the contract with the Southern Pine
Company of Georgia, the Waycross Air-Line Railroad Company
was granted a right of way through all the lands of the former
company over which the railroad company's railroad then ran,
or might thereafter be run, "to and from all points authorized
by the [then existing] charter" of the railroad company. The
"points" to and from which the Waycross Air-Line Railroad
Company, by its charter, was then authorized to run its rail-

road are those designated or indicated in the acts of the legislature from which we have quoted; that is, they are the termini mentioned or indicated in its charter, to and from which it was authorized to construct and operate its main line, or main lines, or the extensions or branches thereof. The meaning of this contract, therefore, was, that the Waycross Air-Line Railroad Company should have a right of way for its railroad, over the lands of the Southern Pine Company of Georgia, to and from any of the termini of the railroad designated or indicated in the charter; not that the railroad company should have a right of way through the lands of the grantor to reach any point indicated in the charter, and, also, the right to build over the land of the grantor spur-tracks extending from its main line in any direction that it might see fit. *"The railroad* of the said party of the second part," which was contemplated and intended by this contract, was its main line, or main lines, and the extensions or branches thereof authorized by the charter, built or to be built to the points designated in its charter, for the public convenience and benefit. The spur-track which the Waycross Air-Line Railroad Company was engaged in constructing when this controversy arose, by its own showing, was not for the purpose of reaching any point named or indicated in its charter, and was to be neither a part of, nor even an essential appendage to, its railroad, but was to be purely temporary in duration and for private use only. The plaintiff alleged in its petition that it was to be built "for the purpose of facilitating the transportation of the freights of Lott & Hatfield, engaged in the sawmill business, and McLean & Perkins and J. F. Cook, engaged in the naval stores business, at or near" the point it was intended to reach; and the superintendent of the plaintiff's railroad testified that the purpose in constructing this spur-track was, "to facilitate the handling of the lumber and naval stores of" these parties, "at said point, at the prevailing rate from Nicholls, to meet the emergency and necessity therefor, the same to be used only temporarily for said purpose, and not to be operated, either temporarily or permanently, as a branch railroad, the freight and passenger trains of plaintiff not to be run thereon, but only cars of lumber and naval stores of said parties to be transferred thereon to plaintiff's depot at Nicholls on its said main line."

While, in a purely mechanical and material sense, this spur-track was a railroad, it was not *the railroad* of the Waycross Air-Line Railroad Company, for which the Southern Pine Company of Georgia granted a right of way through its lands. One who, in general terms, grants to a railroad company, chartered for the purpose of constructing and operating a railroad for public use, a right of way for its railroad over the lands of the grantor, does not thereby grant a right of way for any and every temporary and private spur-track, or branch road, which the railroad company may see fit to construct from its railroad across such lands. The parties in such a case are presumed to have contracted with reference to the kind of a railroad which the railroad company was chartered to build and operate, that is, a railroad for public convenience and benefit, upon which freight and passenger trains are to be operated. The court did not err in refusing the injunction prayed for by the Waycross Air-Line Railroad Company, nor in enjoining it, until the further order of the court, from constructing this spur-track upon the lands of the Southern Pine Company of Georgia.

2. The Waycross Air-Line Railroad Company began to build this spur-track upon and across the lands of the Southern Pine Company of Georgia, without the consent of the latter and without authority of law. While this work was in progress, the latter company assembled a force of its employees, tore up the track which had been constructed upon its land, except a portion thereof upon which stood an engine and cars of the railroad company, which had been used in the work of construction, and prevented the railroad company from further prosecuting the work. The destruction of the track left the engine and cars cut off from the main line of the railroad company. When the railroad company's petition for injunction was presented to the judge, he granted a temporary restraining order against the Pine Company, and restrained the railroad company, until the further order of the court, from constructing, or attempting to construct, the spur-track, but in the same order, granted the railroad company permission to temporarily relay the track which had been torn up, for the sole purpose of removing its engine and cars to its main line, upon the express condition that the railroad company, if thereafter so directed by the court,

would take up and remove the spur-track entirely from the land of the Pine Company. The railroad company relaid the track for the purpose indicated. Upon the subsequent interlocutory hearing, the court, after refusing the injunction prayed for by the railroad company and enjoining it from constructing the spur-track, ordered it to take up and remove all the track which had been laid on the land of the Pine Company. One of the assignments of error is, that the court had no power to order the railroad company to take up and remove this track. While, as a general rule, a court can not, by injunction, compel the performance of an act, we think, under the circumstances of this case, the court had the power to compel the railroad company to take up and remove the track from the land of the Pine Company. When the railroad company, in order to recover its engine and cars, availed itself of the permission granted it by the court to relay the track for this purpose, it elected to accept and abide by the condition upon which the right to do this was granted, and could not thereafter be heard to complain if the court compelled it to take up and remove all the track which it had laid on the land of the Pine Company. It could not exercise the right conferred upon it by the order of the court, without submitting to the terms imposed upon it by that order. Submission to these terms was a condition precedent to the exercise of the right. It is too late, after exercising the right conferred upon it by the order, to question the terms under which it was exercised, or the power of the court to enforce them.

3. The charge that the Southern Pine Company of Georgia and the Offerman & Western Railroad Company had combined and confederated for the purpose of, and were "actually engaged in, paralleling the plaintiff's main line of railroad, by constructing a road from the mill [of the Pine Company] at Marie to said town of Nicholls, there to connect with the Nicholls mill [of the Pine Company] and the said Offerman & Western Railroad," was not sustained by the evidence. The evidence did show that the Pine Company, for the purpose of connecting its mill at Marie with the Offerman & Western Railroad, at Nicholls, was constructing, through and upon its own land, a tramroad from Marie to Nicholls, and that this tramroad would run parallel to and very close to the plaintiff's railroad between

these points. But the evidence did not show that the Offerman & Western Railroad Company had anything to do with the construction of this tramroad, or that such tramroad was to be controlled and operated by this railroad company. It is true that the plaintiff, by an amendment to its petition, did allege, and the allegation was not denied, that the stockholders in the Offerman & Western Railroad Company and the stockholders in the Southern Pine Company of Georgia were "largely the same, with certain of their officers the same, . . both being practically under one control and management." But this did not keep the Pine Company from being a purely private corporation, separate and distinct from the Offerman & Western Railroad Company, nor make the tramroad which it was building, for its own exclusive use, a part of the railroad of such railroad company. The general railroad law of this State, which provides that "the general direction and location" of a new railroad constructed by one railroad company "shall be at least ten miles from [a] railroad already constructed" by another railroad company, except at points "within ten miles of either terminus" (Civil Code, § 2176), does not prevent a purely private corporation from constructing, and itself operating, for its own exclusive use, entirely upon its own land, a tramroad, for the purpose of hauling its own products from its mill, located upon one railroad, to another and competing railroad, for shipment over the latter road, although such tramroad may run parallel to and in close proximity to the first-mentioned railroad. The public policy indicated by this section of Civil Code applies to railroad companies chartered by the State to act as common carriers. It puts no restrictions upon private individuals, or purely private corporations, who may seek to construct and operate, upon their own premises, tramroads, or railroads, for their own exclusive use and benefit.

*Judgment affirmed. All the Justices concurring.*